ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY. v.
W. H. KELLER.

Decided October 28, 1903.

**1.—Damages—Contributory Negligence.**

In an action against a railroad company for damages contributory negligence is an issue which must be alleged and proved by the defendant.

**2.—Venue—Transitory Action—Extra-Territorial Jurisdiction.**

A foreign railway corporation whose line of road extends through New Mexico into this State may be sued in a court of this State by a resident of New Mexico for personal injuries inflicted by the negligence of such corporation's servants in New Mexico.

**3.—Same—Evidence.**

The trial court properly excluded as irrelevant and immaterial testimony to the effect that the courts of New Mexico were available to the plaintiff, he being a citizen and resident of that territory.

**4.—Evidence—Credibility of Witness.**

While, as going to the credibility of a witness he may be questioned to show his pursuit of a degrading or vicious occupation, the rule can not be extended to include occupations not necessarily of such character. The conducting by a white man of a negro club, the purposes of such club not being shown, is not inherently wrong or vicious.

**5.—Verdict—Amount—Personal Injury.**

Note opinion for nature of injuries upon which the jury predicated a verdict for $5000, held not excessive.

Appeal from the District Court of El Paso. Tried below before Hon. J. M. Goggin.

*Turney & Burgess* and *J. W. Terry,* for appellant.

*Zach Lamar Cobb* and *M. W. Stanton,* for appellee.

JAMES, CHIEF JUSTICE.—The action is by appellee for personal injuries sustained at appellant's station in Glorietta, New Mexico, by being struck by an engine while he was standing between appellant's tracks.

Plaintiff went there to meet a passenger on the east-bound train, which train occupied the main track next to the station. There were several other tracks, the next one to the main track being distant approximately ten feet. Glorietta is a small place. The grounds covered by the tracks were used by the public in approaching the depot. Plaintiff had hitched his horse, and approached the main track by a public way or crossing, with a view to crossing the main track and then turning up in the direction of the depot, which was some distance east. When he got to the main track the passenger train had arrived and obstructed his crossing there, and the train being vestibuled and closed he could not cross over it. Under these circumstances he walked up along the track, between this and the next track in the direction of the depot, until the

train began to move out, when he stopped, intending to cross when the train had passed.

There had been a helper engine on this train, engaged in bringing it up grade to the depot. This helper engine had detached, and backed down the track behind plaintiff while he was standing there facing the moving passenger train, and struck him. The evidence showed that plaintiff was not a trespasser, and appellant's counsel do not claim that he was. It was usual for people to take the course plaintiff did in approaching the depot under the same circumstances.

Plaintiff says he did not know the helper engine was coming, and was not expecting it. There was ample evidence that it came along the track rapidly, without giving any signals. There is some testimony of a custom of the helper engine to back down after the passenger train was gone, and that plaintiff had known this for some years. It was also in evidence that the tracks were built for small engines, and that Mogul engines had been used for about a year prior to the time plaintiff was injured and that they were larger and extended over from the outer rails on each side about two feet. The testimony, on the other hand, clearly showed that there was sufficient space for a man to safely stand between moving trains on both tracks. There is no question as to the fact of appellant's negligence. The jury must have found that plaintiff was not guilty of contributory negligence.

Under the second assignment the substance of the proposition is that the petition failing to show that there was not sufficient room between the track on which plaintiff stood and the adjacent track for plaintiff to have stood in safety, the special demurrer ought to have been sustained, for the reason that the petition showed plaintiff was prima facie guilty of contributory negligence.

The petition alleged the circumstances surrounding the transaction at the time he was injured, and alleged that he was exercising due care.

The fact that the space was wide enough to admit of trains passing each other on the two tracks without striking a person standing in the space between them might, at the most, indicate contributory negligence so as to throw upon plaintiff the burden of showing the contrary. Even this effect was probably not due to it. Galveston, H. & S. A. Railway Co. v. Collins, 24 Texas Civ. App., 143. The fact was certainly not conclusive of the question. At all events the facts alleged in the petition tended to negative contributory negligence, and made the issue as to whether or not under existing conditions plaintiff was in the exercise of reasonable care in occupying the position he did. Also the allegation that he was exercising due care at the time was sufficient of itself to raise such issue.

It is undoubtedly true that plaintiff could, by having observed a certain degree of caution, have avoided any danger from an engine moving on the track behind him. But this is not the question. It was whether or not he observed the caution which an ordinarily prudent man would have observed under all the circumstances; and this issue was raised

both by the pleading and the evidence, and was properly left to the jury. We disregard in this connection all evidence tending to show that the employes on the engine saw plaintiff in time to have avoided injuring him, as such issue does not seem to have been made nor submitted.

Plaintiff was doing what was usual and customary for persons in that vicinity to do in approaching the depot across appellant's yards; he was standing off a safe distance from the moving passenger train, though further than he needed to have done, facing the train until it should have passed, in order to cross. The track behind him was open, and his position with reference to it could be seen from a distance. He had some reason to assume that the helper engine would not move until the passenger had gone, and that it would give signals of its approach if it did come. It came rapidly. He did not see it coming, did not hear it, and naturally the noise of the train in front of him tended to prevent hearing its mere motion. Galveston H. & S. A. Railway Co. v. Collins, 24 Texas Civ. App., 143; Texas Midland Railway Co. v. Crowder, 25 Texas Civ. App., 536.

It is not necessary to say more in connection with the second and third assignments.

The first assignment presents an exception to the jurisdiction of the District Court of El Paso County over the parties and subject matter for the reason that plaintiff's pleadings showed that defendant was a resident citizen of San Miguel County, New Mexico, and the defendant was a foreign corporation, and the cause of action arose in New Mexico, in which Territory defendant operated a line of railroad.

We need not examine plaintiff's pleadings to ascertain all the allegations. Assuming that the question was properly raised at the proper time, in the trial court, and assuming that the statements contained in the assignment are accurate, the assignment is not sustainable. Southern P. Railway Co. v. Graham, 12 Texas Civ. App., 567; Sorkin v. Railway Co., 53 S. W. Rep., 608.

Defendant was alleged to be operating its railway in El Paso County, Texas. The cause of action was a transitory one. The jurisdiction of the district courts of Texas extended to the adjudication of matters of the nature involved. It is entirely unimportant that plaintiff could have gone into the courts of his Territory for the same relief. He had a cause of action, and it was his right to resort to any court that had jurisdiction to try and determine it, and also jurisdiction over the defendant. He may have thought that he could obtain relief more expeditiously in the courts of this State. Or he may have had some other reason.

Under the fifth assignment we have this proposition: "The fact that plaintiff left his own home to come to El Paso to sue is a circumstance tending to affect the good faith and merit of his case with the jury, and in this connection the defendant was entitled to have it shown to the jury that there were courts open to plaintiff in the Territory of New Mexico, where he was a citizen and resided." Testimony of this char-

acter was excluded because irrelevant and immaterial. If plaintiff was authorized to resort to the trial court for the adjudication of his case against this defendant, he was entitled to have it considered on the law and the evidence, as if it were the only court that was open to him. It can not be claimed for a moment that such testimony was relevant to any issue involved. We have heard of efforts to impeach a litigant as a witness, but never before of impeaching him as a party. If its purpose was to impeach or discredit his testimony, it could not be done in such manner.

The court also ruled correctly in excluding testimony the purpose of which was to show the witness Cummings was occupying a room in the Bronson building in El Paso, ostensibly for the purpose of conducting a messenger service and insurance business, but really for conducting a negro club. The proposition is that the testimony tended to discredit plaintiff's character and credibility as a witness, and that such testimony ought to be allowed as having a legitimate bearing on the credit of any witness. There is ample authority for allowing a witness to be asked concerning his occupation, if it be a disgraceful or vicious one. Underh. on Ev., p. 518; 1 Greenl. on Ev., sec. 456. It seems to us that the occupation in order to have any discrediting effect must be one in its nature degrading or vicious. There is nothing unlawful in the existence or the conducting of a club for negroes, and nothing inherently wrong in conducting one. No offer whatever was made to show the objects or nature of the club. In the absence of this, it must be taken for the purpose of this case that it was for legitimate purposes. Although conducted by a white person, its objects may have been of such worthy character as to commend him to public approbation. We may also add, although it seems to be unnecessary to do so, that there is nothing in the bill to show that the witness was himself a Caucasian.

Plaintiff's injuries were severe. We need not set them out in detail. He was a robust man when hurt, and although 69 years of age, he had a substantial expectancy. He had been earning about $75 a month, and was incapacitated for work. According to the evidence his mind and memory were affected by injury to his spinal cord and base of his brain, and he suffers from nervousness and loss of sleep. His injuries about the body were painful, and in damp weather he still suffers pain. His left arm was broken, and he has no strength in it. Physicians testified that the injuries to his mind and nervous system and to his arm are permanent. The evidence is probably stronger than we have stated it. We would not be warranted in condemning the verdict for $5000 as excessive.

*Affirmed.*

Writ of error refused.